Gary J. Smith, Esq. (SBN 141393)
GSmith@bdlaw.com
BEVERIDGE & DIAMOND PC
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: 415-262-4000
Facsimile: 415-262-4040

Attorney for Plaintiff-Intervenor
AIRLINES FOR AMERICA

*[Additional Counsel Listed on Next Page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CALIFORNIA TRUCKING ASSOCIATION, et al.,<br><br>Plaintiff,<br><br>AIRLINES FOR AMERICA,<br>Plaintiff-Intervenor,<br><br>v.<br><br>SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT, et al.,<br><br>Defendants,<br><br>STATE OF CALIFORNIA and CALIFORNIA AIR RESOURCES BOARD,<br>Defendants-Intervenors,<br><br>EAST YARD COMMUNITIES FOR ENVIRONMENTAL JUSTICE et al.,<br>Defendants-Intervenors. | Case No. 2:21-cv-6341-JAK-MRW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Hon. John A. Kronstadt<br>Date: March 20, 2023 |

*ADDITIONAL COUNSEL:*

Thomas Richichi, Esq. (*admitted pro hac vice*)
Jennifer J. Leech, Esq. (*admitted pro hac vice*)
TRichichi@bdlaw.com
JLeech@bdlaw.com
BEVERIDGE & DIAMOND PC
1900 N Street, NW, Suite 100
Washington, DC 20036
Telephone: 202-789-6000
Facsimile: 202-789-6190

STEVEN J. ELIE (SBN 130566)
s.elie@musickpeeler.com
MUSICK, PEELER & GARRETT LLP
One Wilshire Building
624 South Grand Avenue, Suite 2000
Los Angeles, California 90017-3383
Telephone: (213) 629-7745
Facsimile: (213) 624-1376

Attorneys for Plaintiff-Intervenor
AIRLINES FOR AMERICA

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................1

II.     STATEMENT OF UNCONTROVERTED FACTS...................................3

III.    LEGAL STANDARD FOR SUMMARY JUDGMENT ..............................3

IV.     ARGUMENT.........................................................................................3

    A.    Preemption Under the Supremacy Clause.................................3

    B.    The Rule is Preempted by the Airline Deregulation Act ......................5

        1.    The Congressional Purpose Underlying the ADA......................5

        2.    The ADA Protects Air Carriers' System of
Transportation ......................................................................7

        3.    Threshold Issues of ADA Preemption.....................................9

        4.    The ADA Expressly Preempts Local Regulation of
Vehicles...............................................................................10

        5.    None of the ADA Exemptions Apply to Rule 2305 .................12

        6.    Rule 2305 Affects Air Carrier Services, Routes, and
Prices..................................................................................13

        7.    The Undisputed Facts Compel ADA Preemption ...................19

        8.    The Rule Sets a Precedent at Odds with the ADA's
Purpose...............................................................................21

    C.    The Rule is Preempted by the Clean Air Act....................................23

        1.    The District Cannot Establish Vehicle Emissions
Standards.............................................................................23

        2.    Rule 2305 Establishes an Unlawful Purchase Mandate ...........24

        3.    CAA Preemption Avoids Emissions Regulation Chaos...........24

V.      CONCLUSION...................................................................................25

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR
AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT,
CASE NO. 2:21-cv-6341

# TABLE OF AUTHORITIES

**Cases**

*Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*,
266 F.3d 1064 (9th Cir. 2001) .......................................................................5

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
520 F.3d 218 (2d Cir. 2008) .........................................................................6

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)......................................................................................7

*Am. Trucking Associations, Inc. v. City of Los Angeles, Cal.*,
569 U.S. 641 (2013)....................................................................................17

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007)..........................................................................18

*Cal. Trucking Ass'n v. Bonta*,
996 F.3d 644 (9th Cir. 2021) .............................................................. 12, 13, 20

*Cal. Trucking Ass'n, Inc. v. Bonta*,
142 S.Ct. 2903 (2022)................................................................................ 12

*Cal. Trucking Ass'n v. Su*,
903 F.3d 953 (9th Cir. 2018) .................................................................. 15, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................3

*Charas v. Trans World Airlines, Inc.*,
160 F.3d 1259 (9th Cir. 1998) ................................................................... 15

*City of Burbank v. Lockheed Air Terminal, Inc.*,
411 U.S. 624 (1973)......................................................................................4

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................................................................................3, 4

*CSX Trans., Inc. v. Easterwood*,
507 U.S. 658 (1993)....................................................................................22

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013).................................................................................. 4

*Dilts v. Penske Logistics, LLC*,
769 F.3d 637 (9th Cir. 2014) .......................................................... 16, 17, 21, 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR
AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT,
CASE NO. 2:21-cv-6341

*Engine Mfrs. Ass'n v. U.S. EPA*,
    88 F.3d 1075 (D.C. Cir. 1996)..................................................................25

*Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*,
    541 U.S. 246 (2004)............................................... 2, 5, 23, 24, 25

*Fed. Express Corp. v. Cal. Pub. Utils. Comm'n*,
    936 F.2d 1075 (9th Cir. 1991) ....................................................... passim

*Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*,
    634 F.3d 206 (2d Cir. 2011) ....................................................... 20, 21

*Hayfield N. R.R. Co. v. Chicago & Nw. Transp. Co.*,
    467 U.S. 622 (1984).....................................................................4

*Hingson v. Pac. Sw. Airlines*,
    743 F.2d 1408 (9th Cir. 1984) .....................................................20

*Hughes Air Corp. v. Public Utils. Comm'n of State of Cal.*,
    644 F.2d 1334 (9th Cir. 1981) .....................................................10

*In re Delta Airlines, Inc.*,
    No. LA CV20-00786 JAK(SKx), 2021 WL 6882407
    (C.D. Cal. Nov. 19, 2021).....................................................................15

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
    642 F.3d 685 (9th Cir. 2011) .....................................................7

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,
    644 F.3d 934 (9th Cir. 2011) .....................................................23

*Meinhold v. Trans World Airlines, Inc.*,
    949 F. Supp. 758 (C.D. Cal. 1996) .....................................................5

*Miller v. C.H. Robinson Worldwide*,
    976 F.3d 1016 (9th Cir. 2020) .....................................................15

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992).......................................................... passim

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y. State Dep't of Envtl. Conservation*,
    17 F.3d 521 (2d Cir. 1994) .....................................................25

*N.C., ex rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010) .....................................................25

*Nw. Airlines, Inc. v. Minn.*,
    322 U.S. 292 (1944).....................................................................23

iii

*Pac. Merchant Shipping Assn. v. Goldstene*,
   517 F.3d 1108 (9th Cir. 2008) ....................................................................................3

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016).....................................................................................................7

*Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*,
   266 F.3d 1064 (9th Cir. 2001) .................................................................................. 5

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008).......................................................................................... passim

*Sanchez v. Aerovias de Mexico, S.A.*,
   590 F.3d 1027 (9th Cir. 2010) ................................................................... 3, 7, 18

*Ventress v. Japan Airlines*,
   603 F.3d 676 (9th Cir. 2010) ....................................................................................6

*Ventress v. Japan Airlines*,
   747 F.3d 716 (9th Cir. 2014) ..................................................................................23

**Statutory Authorities**

Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 et seq .......................................................1
42 U.S.C. § 7409 .........................................................................................................23
42 U.S.C. § 7410(a)(5)................................................................................................25
42 U.S.C. § 7412 .................................................................................................. 24, 25
49 U.S.C. § 1302(a)(5)............................................................................................7, 23
49 U.S.C. § 1302(b)(1)..................................................................................................7
49 U.S.C. § 1302(b)(2)..................................................................................................7
49 U.S.C. § 1302(c) ................................................................................................5, 23
49 U.S.C. § 14501(c)(1)................................................................................................8
49 U.S.C. § 40101 .......................................................................................................22
49 U.S.C. § 41713 .........................................................................................................8
49 U.S.C. § 41713(a)(4)(B)(i).....................................................................................13
49 U.S.C. § 41713(b) ....................................................................................................7
49 U.S.C. § 41713(b)(1) ..............................................................................................14
49 U.S.C. § 41713(b)(4) ..............................................................................................11
49 U.S.C. § 41713(b)(4)(A) ......................................................................... 1, 2, 8, 19
49 U.S.C. § 41713(b)(4)(B)(i) .............................................................................. 14, 19

**Rules and Regulations**

Fed. R. Civ. P. 56(a)..............................................................................................2, 3
Fed. R. Civ. P. 56(c)..............................................................................................2, 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR
AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT,
CASE NO. 2:21-cv-6341

**Constitutional Provisions**

U.S. Const.Art. VI, cl.............................................................................................4

H.R. Conf. Rep. No. 95–1779, 95th Cong., 2d Sess. 53 (1978), *reprinted in,* 1978
U.S.C.C.A.N. 3737, 3773) .....................................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR
AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT,
CASE NO. 2:21-cv-6341

## I.   INTRODUCTION

Plaintiff-Intervenor Airlines for America ("A4A") challenges the adoption and enforcement of Rule 2305 and its companion Rule 316 (collectively, "Rule 2305" or "the Rule")[1] by defendant South Coast Air Quality Management District ("District") and its Board (collectively, the "District") because federal law preempts Rule 2305 under the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713, and the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq*.

A4A members are commercial air carriers transporting property in air commerce employing vehicles subject to this local regulation. Uncontroverted Fact ("UF") 1–7. The ADA identifies aircraft and vehicles as comprising one unified mode of transportation. *Fed. Express Corp. v. Cal. Pub. Utils. Comm'n*, 936 F.2d 1075, 1078 (9th Cir. 1991) (an air carrier's "trucking operations" are not a separate business operation but an integral part of a unified air delivery system). Consistent with the statute's deregulatory purpose, the ADA expressly preempts local regulation of the prices, routes or services of carriers "transporting property by aircraft or by motor vehicle." 49 U.S.C. § 41713(b)(4)(A). That prohibition is subject to limited exceptions, none of which apply here. *Id.*

Rule 2305 sets forth a compliance scheme expressly designed to accelerate the transition of trucks in the District to Zero Emission or Near Zero Emission vehicles (collectively "ZEVs"). UF 8. That scheme consists of a suite of economic compliance measures (vehicle replacement, fees in the form of sanctions, and mitigation provisions) intended to compel that transition. UF 9–10. Regardless of the compliance strategy an air carrier pursues to fit the Rule's regulatory measures into its system of property transportation services, under the Rule, those measures

---

[1] Rule 2305 – Warehouse Indirect Source Rule ("ISR") – Warehouse Actions and Investments to Reduce Emissions ("WAIRE") Program includes imposing fees through its companion rule, Rule 316 – Fees for Rule 2305.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

have the effect of directly regulating air carrier routes and services and imposing costs that affect prices. UF 11.

The Rule impermissibly regulates the system of property transportation an air carrier provides by imposing obligations that vary in magnitude (whether individually or in combination) based entirely on the essential aspects of that system: its warehouse size; number of vehicle trips to and from those warehouses; vehicle class (size) and motive power. UF 11–12. The Rule also impermissibly regulates air carriers by dictating (for any given level of service provided by a carrier's delivery system) what a carrier must to do to satisfy its transition-forcing compliance scheme – whether by paying fees to the District, buying its preferred truck types, or adopting another mandated mitigation measure.  The associated costs of compliance translate into price increases.

The ADA prohibits such regulation of routes and services. When property is transported in air commerce, whether by aircraft or motor vehicle, the ADA expressly preempts local regulation of the *types* of aircraft and vehicles and the manner in which they are used. 49 U.S.C. § 41713(b)(4)(A).

The Rule is also preempted by the CAA. The Rule's ZEV mandate is a local regulation that imposes a mobile source emissions standard as a purchase requirement on the end users of vehicles and is therefore preempted by the CAA. *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004).

As set forth below and in the Statement of Uncontroverted Facts, there are no genuine issues of material fact regarding the Rule's nature and impact on air carriers. The District does not have authority to impose a local regulation on the vehicles that provide property transportation services at A4A member facilities. Rule 2305 satisfies none of the statutory exemptions enumerated in the ADA, and it is not authorized under the CAA. A4A is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c) and the Court should enjoin the District's

effort to implement and enforce Rule 2305.

## II.    STATEMENT OF UNCONTROVERTED FACTS

A4A's Statement of Uncontroverted Facts and Conclusions of Law is attached hereto. For judicial economy, A4A incorporates by reference the undisputed facts and arguments in Plaintiff California Trucking Association's Motion for Summary Judgment and Supporting Memorandum ("CTA Motion").

## III.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal preemption is a question of law appropriate for summary judgment. *See, e.g., Sanchez v. Aerovias de Mexico, S.A.*, 590 F.3d 1027, 1031 (9th Cir. 2010) (ADA preemption); *Pac. Merchant Shipping Assn. v. Goldstene*, 517 F.3d 1108, 1115 (9th Cir. 2008) (CAA preemption). Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The party seeking summary judgment bears the initial burden to show the basis for its motion and to identify those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A4A has met that burden.

## IV.    ARGUMENT

### A.    Preemption Under the Supremacy Clause

The Constitution's Supremacy Clause provides that federal law is the "supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST., ART. VI, CL. 2. State law is preempted "to the extent of any conflict with a federal statute," regardless of whether the conflict is express or implied. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Courts must "find preemption where … under the circumstances of [a] particular case, [the challenged state law] stands as an

3

obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372–73; *Hayfield N. R.R. Co. v. Chicago & Nw. Transp. Co.,* 467 U.S. 622, 627 (1984). The federal government's power to preempt state law where Congress can legislate is potent; it divests states of the ability to regulate in an area covered by the scope of the legislation. *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 638–39 (1973) (holding Federal Aviation Act preempted a municipal noise ordinance).

Federal law preempts Rule 2305 pursuant to two statutes. The ADA and CAA prohibit the adoption of local mandates that (a) adversely affect the means by which commercial airlines engaged in the transportation of property in air commerce provide such services and the costs of the same; (b) supplant the federal statutory scheme governing the enforcement of emissions standards for trucks by imposing a vehicle purchase requirement on individuals and end users.

Rule 2305 (1) regulates the types of vehicles that air carriers and their contractors must use to transport property in air commerce and provide property transportation services; (2) imposes compliance obligations, including financial penalties, on air carriers based upon the size of the vehicles air carriers employ, the frequency of operations, and the capacity of the warehouses served by those vehicles; and (3) directly regulates air carrier operations necessary to conduct the integrated air and ground transport services that ensure the free flow of air commerce. UF 8–12.

The Rule also imposes economic and operational burdens on the means, methods, and frequency with which commercial air carriers conduct their business, affecting the services, routes, and prices of those air carriers. Any such local regulation, whether direct or indirect, is preempted by the ADA. *See Dan's City Used Cars, Inc. v. Pelkey,* 569 U.S. 251, 260 (2013) (quoting *Rowe v. N.H. Motor Transp. Ass'n,* 552 U.S. 364, 370 (2008)).

CAA preemption applies to state and local regulations, including Indirect Source Rules ("ISRs") like Rule 2305, that attempt to establish emissions standards for trucks owned by air carriers and their affiliates. *Engine Mfrs. Ass'n*, 541 U.S. at 256 (holding a local authority may not impose emission mandates either directly or by indirect means).

The District lacks authority to adopt and enforce Rule 2305 against air carriers, either directly or indirectly. *Rowe*, 552 U.S. at 368, 370–71. The District's attempted regulatory end-around of the ADA and the CAA is unlawful. UF 13–18. These statutory preemption provisions are summarized below.

**B.      The Rule is Preempted by the Airline Deregulation Act**

**1.      The Congressional Purpose Underlying the ADA**

The ADA is a critical statutory component of a national scheme for the economic deregulation of aviation. As the Ninth Circuit has held, "Congress's clear and manifest purpose in enacting the ADA was to achieve … the economic deregulation of the airline industry." *Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*, 266 F.3d 1064, 1070 (9th Cir. 2001). The ADA "was designed to promote maximum reliance on competitive market forces" to ensure economical, efficient, and comprehensive air transport services, including the transportation of property, while facilitating the present and future air commerce needs of the United States. *Id.*; *see also Meinhold v. Trans World Airlines, Inc.*, 949 F. Supp. 758, 759 (C.D. Cal. 1996) (the ADA was enacted "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety and price of air services," *citing* H.R. Conf. Rep. No. 95–1779, 95th Cong., 2d Sess. 53 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 3737, 3773).

As the Ninth Circuit has explained, to ensure the accomplishment of that purpose, it was necessary for the ADA to include preemption provisions to prevent states from "undo[ing] federal deregulation with regulation of their own." *See*

5

*Ventress v. Japan Airlines*, 603 F.3d 676, 681 (9th Cir. 2010); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008). By including these specific statutory preemption provisions, Congress sought to ensure the ADA purposes and avoid the effect of a balkanized system of local laws and a patchwork of regulatory regimes at odds with a national objective of deregulating air commerce. *Id.*

The Ninth Circuit has explained the legal and policy considerations governing the application of the ADA to local regulation in order to place the statute in the context of the broader federal scheme regarding the regulation of air commerce. *Fed. Express,* 936 F.2d at 1078–1079. As an essential engine of national commerce, Congress has recognized that air commerce and aviation safety cannot be regulated locally, but instead are matters of national interest that must be addressed at the federal level. Any other approach would make impossible the intended safe, economical, and efficient movement of passengers and air cargo in air commerce through services provided by air carriers.

The court spoke directly to this issue relying upon a "reading of the plain words of the statute" to confirm the purposes of the ADA and its sister provision, the Federal Aviation Act of 1958, stating:

> The Federal Aviation Act of 1958 confided to federal authority the "promotion of adequate, economical, and efficient service by air carriers at reasonable charges." Amending the 1958 Act in 1977, Congress reiterated that it had reserved to federal authority, under the primary and exclusive jurisdiction of the FAA, responsibility for the regulatory decisions with respect to aviation-related matters both to ensure the safe and efficient functioning of commercial aviation operations, but farther in order to "facilitate adaptation of the air transportation system to

6

the present and future needs of the domestic and foreign commerce of the United States.”

*Fed. Express*, 936 F.2d at 1078 (*citing* 49 U.S.C. § 1302(a)(5); (c)).

While Congress recognized that an *exclusively* federal regulatory scheme was necessary to meet the present and future needs of all aspects of U.S. air commerce, it placed a particular emphasis on the “encouragement and development of an expedited all-cargo air service system.” *Id.* (*citing* 49 U.S.C. § 1302(b)(1)).[2] As the means to achieve that statutory goal, Congress identified the fundamental need for “development of an integrated transportation system*,*” for all-cargo air service. *Id.* (*citing* 49 U.S.C. § 1302(b)(2)). Developing that integrated air transportation system to include all-cargo air services brought with it the recognition of the ADA preemption provisions’ need for specific restrictions on local regulations related to the transportation of property in air commerce.

Accordingly, Congress broadly preempted state and local regulation that “relate[s] to” the transportation services, routes or prices of any air carrier. 49 U.S.C. § 41713(b).[3] Further, Congress expanded upon that ADA preemption language to expressly preempt local regulation of (1) the transportation of property by air carriers and (2) the physical means used to transport that property. That express preemption language obviates any presumption against preemption in this instance. *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115,125 (2016).

**2.      The ADA Protects Air Carriers’ System of Transportation**

The ADA’s language and the cases that have applied its preemption

---

[2] In 1994, Congress recodified the Title 49 aviation-related statutes (from § 1302 to § 41713) and modified the preemption provision language, with no intended substantive changes. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 n.1 (1995).
[3] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding that the ADA “expressly pre-empts the States from ‘enact[ing] or enforc[ing] any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier.’”); *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 642 F.3d 685, 696–97 (9th Cir. 2011); *Sanchez*, 590 F.3d at 1030.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA’S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

provisions consider the system of transportation of property by air carriers through the use of aircraft and trucks as a unified whole. As the Ninth Circuit held in *Federal Express*, an air carrier's "trucking operations are not some separate business venture; they are part and parcel of the air delivery system . . . Every [air carrier's] truck carries packages that are in interstate commerce by air." 936 F.2d at 1078.[4] This predicate serves as the point of departure for any analysis of ADA preemption related to the local regulation of air carrier vehicles.

The court in *Federal Express* put the practical rationale for this prohibition in clear perspective. "[T]he system operates as an integrated whole . . . trucks are an essential component of the system." *Id.* at 1077. The court further held that ADA preemption attaches when an air carrier is transporting property by aircraft or by motor vehicle, whether or not the property has had or will have a prior or subsequent air movement. *Id.* Local authorities are preempted from regulating not only *aircraft* that transport property in air commerce, but also *air carrier vehicles*.

The court's holding was firmly grounded in the plain language of the statute. The ADA's express language preempts local regulation where an air carrier "is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement)." 49 U.S.C. § 41713(b)(4)(A). So the ADA both expressly and impliedly preempts Rule 2305.

The court's holding was also grounded in the reality of the means necessary to ensure the "free flow" of transportation in air commerce intended by Congress and recognized by the courts. As the court in *Federal Express* explained, the movement of property in air commerce involves a complex matrix of

---

[4] 49 U.S.C. § 14501(c)(1). Common motor carrier operations are also protected from local regulation by separate statutory provisions of the Federal Aviation Administration Authorization Act of 1994 Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). The ADA and FAAAA and are codified at 49 U.S.C. § 41713 and § 14501(c)(1) respectively.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

considerations and variables that impact the *routes* chosen and the means by which such services are provided by an air carrier. 936 F.2d at 1077. The choice of the *mode* of transportation of property employed by air carriers to or from the Los Angeles area depends on air traffic control delays, weather, aircraft maintenance and availability, and the volume of packages in the entire system. To keep to scheduled service, the routes and means of transport must be determined to avoid even the most minor delays, and the air carrier "must be prepared to meet changing weather, mechanical breakdowns, and varying conditions at airports." *Id.*

Rule 2305, by its terms, has the purpose and effect of intruding upon that matrix of considerations and variables by imposing local regulation on the trucks that air carriers use to provide property transportation services. The compliance obligations for using ZEVs and the associated fees imposed on these air carrier transportation services are a direct function of (1) the frequency and number of trips their trucks undertake to their destination; (2) the size of those trucks; and (3) the capacity of the cargo facilities those trucks service. UF 9–12.

Because Rule 2305 regulates the means, methods, and frequency of trucking and warehouse operations integral to air carrier transport operations, either directly or through the imposition of significant financial penalties, the Rule "relates to," i.e., has a material impact on, air carrier services, routes, and costs, the three statutory triggers for ADA preemption.

### 3.  Threshold Issues of ADA Preemption

The Supreme Court in *Morales* set forth three general conclusions regarding ADA preemption that are significant threshold issues here. 504 U.S. at 385–86.

*First*, the Court held that a local regulation is subject to preemption regardless of whether it expressly targets air carriers, directly or indirectly. *Id.* at 383; *Rowe*, 552 U.S at 370. The ADA not only preempts local regulation specifically directed at air carriers, *but also laws of general applicability*. *Id.* at

9

386. The Court concluded that to hold otherwise "ignores the sweep of the 'relating to' language." Because of its breadth, the ADA preempts laws that do not target the airline industry per se. *Id.* (rejecting the argument that "only state laws specifically addressed to the airline industry are pre-empted"). Thus, the ADA also preempts regulations of general applicability that impose local compliance obligations on the transportation of property in air commerce. *Id.*

*Second*, *Morales* clarified that ADA preemption prohibits a local authority from enacting regulations that impose material costs on an air carrier's services that might affect the prices of those services, or from "otherwise promulgating economic regulations, for any air carrier." *Id*. at 388; *Fed. Express,* 936 F.2d at 1078–79. Adopting a broad interpretation of the "relating to" language in the ADA, the Court held that the ADA's preemption clause is not limited only to those state laws or actions that actually seek to prescribe prices, routes, or services. *Id.* at 385 (once again declaring that such a view "simply reads the words 'relating to' out of the statute"); *Hughes Air Corp. v. Public Utils. Comm'n of State of Cal.*, 644 F.2d 1334, 1337 (9th Cir. 1981). Thus, preempted regulations need not actually refer to air carrier prices, routes, or services, but can violate the ADA through requirements, direct or indirect, that significantly affect the same.

*Finally*, the Court held that the ADA preempts state and local regulation, even if it is claimed that it conforms to federal law. 504 U.S. at 387. Here, the District claims that its ISR regulatory authority is based on state law, which means that it is subject to preemption by the ADA notwithstanding any argument that it is otherwise consistent with the CAA. UF 26.

### 4.    The ADA Expressly Preempts Local Regulation of Vehicles

In the ADA, Congress paid special attention to local regulation of air carrier *vehicles* that transport property in air commerce and insulated those vehicles from local restrictions, subject to a few statutory exceptions.

In *Federal Express*, the court addressed the specific issue of state and local economic regulation of vehicles air carriers use in their operations and found the regulations preempted under the ADA. 936 F.2d at 1078. The court needed to look no further than the statute's operative language which provides:

(A) General rule.—

> Except as provided in subparagraph (B), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law. . . when such carrier is transporting property by aircraft or by motor vehicle (whether or not such property has had or will have a prior or subsequent air movement).

49 U.S.C. § 41713(b)(4).

The ADA makes no distinction between aircraft and trucks in its preemptive scope and effect. Rather, the ADA preempts any regulation adopted by a political subdivision of a State, such as the District, to the extent it attempts to regulate the transportation of property by aircraft *or by motor vehicle*. This is true regardless of whether the property *has had or will have a prior or subsequent movement by air*. The plain language of the statute confirms what the *Federal Express* court held, *i.e.*, that every air carrier truck carries property that is in interstate commerce by air, which is preempted from local regulation.

Thus, local regulation of the vehicles used by air carriers to transport property in air commerce is preempted to the extent it interferes with the services they provide, the manner in which those services are provided, and the costs of the same. By expressly tying preemption to regulating (1) air carrier *vehicles* and (2) the transportation of property by those *vehicles*, the Rule 2305 ADA preemption analysis is easily distinguished from the types of local regulatory measures that do

11

not involve air carrier vehicles or the transportation of property in air commerce. *Compare Rule 2305 with Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644 (9th Cir. 2021) *cert. denied sub nom. Cal. Trucking Ass'n, Inc. v. Bonta*, 142 S.Ct. 2903 (2022) (regulation of common carrier terms of employment).

Here, the District is seeking to regulate the means, methods, and frequency of the services A4A members provide to customers — services integral to the transportation of property in air commerce. The Rule sets vehicle and equipment mandates and imposes associated economic costs that directly target vehicles air carriers use in their cargo operations to move property to and from warehouses they own or operate; i.e., how they provide their transport services. Rule 2305(d)(1), (5); UF 19–12; 19–20. The Rule makes the extent and nature of these economic compliance obligations a direct function of the number and size of vehicles an air carrier employs to transport property in air commerce and the frequency of vehicle operation. UF 10–12.

Rule 2305 runs afoul of the ADA, both in terms of (1) its language that imposes significant economic sanctions to be levied based upon the air carriers' means and frequency of transportation operations, and (2) dictating the vehicles carriers must use to provide their services, directly binding them to that means of operation when transporting property. Thus, the ADA expressly preempts Rule 2305 because the ADA, by its plain language, preempts this type of vehicle regulation by a state or local governmental authority.

### 5.    None of the ADA Exemptions Apply to Rule 2305

Congress carefully circumscribed any exceptions to ADA preemption. The statute enumerates specific exemptions that State or local authorities may invoke to regulate vehicles used by air carriers to provide transportation services. The exceptions in the ADA are confined to:

(1)    the safety regulatory authority of a State with respect to

12

motor vehicles;

(2)     the authority of a State to impose highway route controls
or limitations based on the size or weight of the motor vehicle,
or the hazardous nature of the cargo; or

(3)     the authority of a State to regulate motor carriers with
regard to minimum amounts of financial responsibility relating
to insurance requirements and self-insurance authorization.

49 U.S.C. § 41713(a)(4)(B)(i).

None of the statutory exceptions are reflected in the Rule. The Rule does not involve motor vehicle safety, highway weight limits, hazardous cargo restrictions, or vehicle insurance. While it regulates air carrier trucks, Rule 2305 should not be understood as allowing the District to regulate those vehicles in the same way the statute carves out California's general traffic laws and highway safety requirements for trucks. *Cal. Trucking Ass'n*, 996 F.3d at 661–62.

**6.     Rule 2305 Affects Air Carrier Services, Routes, and Prices**

The Rule's compliance scheme consists of a suite of economic measures (vehicle replacement, fees in the form of sanctions, mitigation measures) that share three essential aspects, regardless of the compliance scenario dictated by an air carrier's circumstances: (1) they consist of compliance obligations that involve direct or indirect financial penalties; (2) the severity and magnitude of those obligations is based upon the number of vehicles, vehicle trips and class (size) of the vehicles the carrier employs to provide transportation services to its customers; and (3) those obligations vary commensurate with the volume of vehicles and operations used to deliver services to customers. UF 9–12.

The Rule directly regulates A4A air carriers' property transportation services. Their WAIRE obligations are a direct function of the frequency of the

13

service in air commerce they provide and the means by which they provide it.[5] Rule 2305(d)(1), (5); UF 9–12. In addition, the District has structured the Rule – regardless of the air transportation system a carrier has adopted – to incorporate business practices the District prefers and/or incur financial penalties. Further, the District has calibrated the Rule's compliance scheme such that its financial effects will force air carriers to change their business practices, volume of vehicle operations and physical assets used to transport property in air commerce. UF 8.

The Rule's compliance scheme has the purpose and effect of limiting decisions by carriers in response to the market and requiring "delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate." *Rowe*, 552 U.S. at 372. As such it relates to air carrier services, routes and prices and is preempted. *Id*.; UF 8.

**<u>Services</u>**

Just as the District cannot dictate the frequency of operations and *type of aircraft* the airlines must use to transport cargo to and from airports in the South Coast, it cannot regulate frequency of trips and the *type of vehicles* air carriers must use to transport property to and from the warehouses that serve those operations. The ADA has eliminated the distinction between vehicles going to and from carrier cargo facilities, and whether the movement of property by those vehicles involves a prior or subsequent movement by air. *Fed. Express*, 936 F.2d at 1078.

But Rule 2305 targets the vehicles and number of vehicle trips integral to delivery of those services. UF 19–20. The Rule unlawfully: (1) dictates the *type* of vehicles air carriers must use based upon in the integrated air transport operations

---

[5] The ADA states that, except as provided under 49 U.S.C. § 41713(b)(4)(B)(i), "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

they provide as services to businesses, shippers, and the public in the South Coast; UF 8–9; 12; and (2) imposes significant compliance obligations on air carriers as a regulatory "hammer" to compel compliance with the District's environmental goal of reducing vehicle emissions mandate. UF 9–11; 21.

For transportation of property, the type of vehicle used to transport property and the frequency of its operation are fundamental aspects of the service the air carrier is providing.[6] The vehicle required to accomplish property movement is an "essential detail" of the carriage itself and local regulation of essential details of a carrier's system for picking up, sorting and carrying goods is preempted. *Rowe,* 552 U.S. at 373; *see also Miller v. C.H. Robinson Worldwide*, 976 F.3d 1016, 1025 (9th Cir. 2020). They are also a critical aspect in the selection of motor carriers by the airlines to carry out that service, a matter which "falls squarely within the scope" of ADA preemption. *Miller*, 976 F.3d at 1035.

Mandates requiring the use of ZEVs compel a "specific system of delivery," *Cal. Trucking Ass'n v. Su*, 903 F.3d 953, 966 (9th Cir. 2018), and therefore fall within the ambit of services subject to ADA preemption. *Miller*, 976 F.3d at 1023–24. Additionally, the fact that the requirements of the Rule are specifically tied to the frequency of vehicle operations and the resulting scheduling of such vehicles confirms that the Rule "relates to" services and is preempted. *In re Delta Airlines, Inc.*, 2021 WL 6882407 (preemption related to a *service* includes "such things as the frequency and scheduling of transportation"). UF 12.

Further, the Rule's environmentally-based vehicle mandate applies even if the ZEVs required to replace current vehicles (e.g., large tractor-trailers) are not

---

[6] *See Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1262–63; 1265 (9th Cir. 1998), *opinion amended on denial of reh'g*, 169 F.3d 594 (9th Cir. 1999)(holding that Congress used the word "service" in the ADA to refer to origins and destinations of point-to-point cargo transportation and "such things as frequency and scheduling of transportation"); *In re Delta Airlines, Inc.*, No. LA CV20-00786 JAK (SKx), 2021 WL 6882407 (C.D. Cal. Nov. 19, 2021)(*citing Charas*).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

available in the marketplace or feasible as alternatives. UF 22–23. Rule 2305 therefore also falls into the category of a local law preempted because it "directly or indirectly, *binds* the carrier to a particular . . . service and thereby interferes with the competitive market forces within the industry." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 646 (9th Cir. 2014).

Finally, the punitive fees and costs of acquiring ZEVs mandated by the Rule create a disincentive for air carriers to maintain (or increase) the number vehicles they employ and vehicle trips to and from their warehouses in response to the demands of the market that Congress intended to determine the quality, variety and price of air services under the ADA. That disincentive directly affects property transportation services and routes.

### Routes

The weight of the blows from Rule 2305's regulatory hammer are specifically premised on the means of delivery and the frequency of air carrier cargo operations involving the carriers' trucks. By targeting the frequency of vehicle trips and the vehicle used, a ZEV vehicle mandate will also affect the routes an air carrier must use to transport property. The Rule's compliance fees and ZEV requirements are a direct function of the size and nature of air carrier transportation operations. UF 11. ZEV acquisition and fees charged are based on the essential elements of delivery, i.e., the number of vehicle trips, vehicle size, and cargo facility capacity. UF 12. That represents *per se* interference with the essential elements of a carrier's property transportation services, and necessarily the routes used to deliver those services.

Significantly, the Rule applies to vehicles that service both new and *existing* carrier facilities. But existing warehouses covered by the Rule were not sited and constructed to take advantage of emerging infrastructure, such as electric charging stations. UF 24. The existing charging infrastructure for the larger classes of air

16

carrier trucks is limited or nonexistent. UF 24. Even where charging stations are available, charging times will not be uniform across stations and vehicles, which will cause scheduling issues, particularly for larger classes of air carrier trucks.

Additionally, the matrix of sizes, capacities, numbers, and ranges of the conventional trucks that air carriers use to transport property to and from their warehouses represents a system of transport that encompasses a host of variables not capable of being readily integrated with ZEVs without significant changes to that system. *See Fed. Express*, 936 F.2d at 1077, and discussion *supra* at p. 9. The result will be that not all warehouses will remain accessible to current motor carriers, so selecting carriers and their respective pool of vehicles and routes will be compelled to change significantly. UF 24. Air carriers will be forced to replace vehicles and equipment before the end of their useful lives, revise the existing system of vehicles, warehouses, and locations they employ, and restructure their transportation routes. *Dilts*, 769 F.3d at 646.

In *American Trucking*, the Court concluded that adopting a regulatory measure by a local authority (the Port of Los Angeles) which "forced terminal operators—and through them, trucking companies—to alter their conduct by implementing a [regulatory] prohibition" was preempted. *Am. Trucking Associations, Inc. v. City of Los Angeles, Cal.*, 569 U.S. 641 (2013). Here, a local regulatory authority, i.e., the District, has adopted a regulatory measure that forces air cargo warehouse operators—and through them, both the air carriers and their affiliated trucking companies—to alter their conduct (routes and services) through a prescriptive measure penalizing use of their existing non-ZEV vehicles. Rule 2305(d)(1), (5); UF 9–12; 19–20. That regulatory coercion warrants preemption. *See also Rowe,* 552 U.S. at 371-72 (preemption attaches even in those circumstances where compliance requirements apply to shippers rather than motor carriers).

17

**Prices**

The ADA's preempts the economic regulation of air carrier services. Rule 2305 is an economic regulation and its vehicle mandate will affect the prices an air carrier charges to transport property. UF 9–12. And, as the First Circuit has reasoned, "[i]t is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers." *Sanchez*, 590 F.3d 1027 at 1030 (*citing Buck v. Am. Airlines, Inc.,* 476 F.3d 29, 36 (1st Cir. 2007)).

Increased cost margins for transportation services cause increased prices. *Fed. Express*, 936 F.2d at 1078 (explaining that "terms of service determine cost. To regulate them is to affect the price."). Here, those increased costs are directly related to the means and frequency of transportation itself. UF 9–12. For example, Rule 2305(d)(5) provides that warehouse owner-operators must satisfy their WAIRE Point Compliance Obligation by deploying ZEVs, or pay a WAIRE fee at a starting rate of $1,000 for each WAIRE Point. Under the Rules, a typical owner-operator of a District warehouse in the range of 100,000–150,000 square feet with moderate class 2b - 8 truck trips would pay an annual WAIRE fee of up to $1 million dollars. UF 11. Because the Rule does not sunset, those cost burdens will continue and actually increase until the air carrier fully deploys ZEVs.

The out-of-pocket "fees" are not the only cost burden of the Rule that will affect prices. Air carriers will also incur the additional costs of addressing stranded assets and restructuring their existing system of delivering services (vehicles, warehouses, and locations) as they are forced to change their trucking operations.

The effect of the vehicle mandate on services, routes, and prices belies any argument that the effect of Rule 2305 is not related to the regulation of property transportation that falls within the scope of ADA preemption. The general threshold requirements for ADA preemption have been met. All three of the

statutory triggers for ADA preemption—services, routes, and prices—are present here, and the Rule should be preempted.

### 7.     The Undisputed Facts Compel ADA Preemption

Looking to the purposes of the ADA, the language of the statute, and controlling case authority, Rule 2305's requirements can only be read as comprising a local regulatory mandate preempted by the ADA.

First, the Rule applies to transportation of property by air carriers or their affiliates by vehicles. Rule 2305 directly regulates the transportation of property by trucks used by air carriers or their affiliates, which is preempted by the ADA. 49 U.S.C. § 41713(b)(4)(A); UF 9–12; 17.[7]

Second, while not all local regulation of air carriers is preempted, the preemptive effect of the ADA extends to regulations that have an *economic* impact. *Fed. Express,* 936 F.2d at 1078. There is no material dispute that Rule 2305's impact is economic in its purpose, design and effect. UF 9–12.

Third, the Rule is not premised on any statutory exception, *i.e.*, issues of highway safety, hazardous materials movement, vehicle highway weight limits or insurance requirements. 49 U.S.C. § 41713(b)(4)(B)(i). Rule 2305 does not qualify for any exception to avoid preemption as a regulation of general applicability.

Fourth, there is no material dispute that Rule 2305 directs a particular type of service involving operational measures and equipment by regulating the means and frequency of property movement employed by air carriers. *Id*. at 1078; UF 12; CTA Motion, UF 8–13. Because the extent of its compliance obligations are a direct function of air carrier operations and the number and composition of the vehicles that comprise its delivery system, the regulation is focused on the essential

---

[7] Rule 2305 is a regulatory measure enforceable by a local governmental authority, and does not restate any common law principles of tort. *See Hingson v. Pac. Sw. Airlines*, 743 F.2d 1408, 1415–16 (9th Cir. 1984).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

details of carriage itself and is preempted. *Rowe*, 552 U.S. at 373.

As the Court in *Federal Express* held, the trucking operations of air cargo carriers are integral to their overall operations as air carriers and inseparable from air transport for purposes of preemption. 936 F.2d at 1077. They are an integral part of the air delivery system. *Id.* Every truck carries packages that are in interstate commerce by air. Using the trucks depends on the conditions of air delivery, and the timing of the trucks is coordinated and integrated with aircraft schedules as part of a complex matrix of considerations that comprise a "specific system of delivery" protected from local regulation. *Id.*; *Su*, 903 F.3d at 966. Air cargo carriers owe their success in achieving the objectives of the ADA to effectively using trucking as an integral part of their air carrier service. *Rowe*, 552 U.S. at 372, 376; *see also Fed. Express,* 936 F.2d at 1077.

Fifth, Rule 2305 involves compliance obligations directly based on the scope, frequency, and nature of a carrier's operations responsive to the market. The Rule's suite of compliance measures, however applied to a carrier, involve financial consequences tied directly to the type of vehicles used by the carrier or its contractors, their size, and frequency of operations. UF 9–12. The Rule is thus a local regulation preempted by the ADA. *Morales,* 504 U.S. at 385.

Finally, when a rule requiring services be performed using certain types of vehicles, motivated by "a State's own efficiency and environmental goals," it is "likely preempted." *Cal. Trucking Ass'n*, 996 F.3d at 662; *see also Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 634 F.3d 206, 210 (2d Cir. 2011). Such goals fall outside the ADA's enumerated regulatory exceptions from preemption and this Circuit's controlling precedent.

Rule 2305 is effectively such a rule. The regulation is motivated by the District's own efficiency and environmental goals. UF 8; 19–20. What matters is not whether a local regulation may be generally applicable, but whether it is

20

"acting to compel a certain result . . . and what result it is compelling." *Rowe*, 552 U.S. at 375; *Dilts*, 769 F.3d at 645–46.

Here, the result is the pursuit of an environmental goal through an economic regulation. But the Supreme Court held in *Rowe* that, "[d]espite the importance of a public health objective, we cannot agree . . . that the federal law creates an exception on that basis, exempting state laws that it would otherwise pre-empt. The Act says nothing about a public health exception." *Rowe*, 552 U.S. at 374.

The District's environmental goal compels air carriers to an impermissible result, requiring them to offer a system of services that the market does not now provide or that the market would not otherwise provide. UF 23. The Court in *Federal Express* put this in perspective when it recognized and explained the added layer of complexity underlying regulations that affect air carrier vehicles and set them apart from operations that do not involve the movement of property in air commerce. 936 F.2d at 1078–79. That distinction is reflected both in terms of real world considerations and the language and intent of the ADA. *Id.*

There is no dispute that the District lacks the authority to regulate the frequency of operations and type of *aircraft* that air carriers employ to transport property between destinations. UF 13–18. And the ADA makes no distinction between aircraft and motor vehicles for preemption purposes. The District can no more require air carriers to use specific vehicles, technologies or delivery frequencies than it could require them to use specific aircraft or flight times when transporting passengers or cargo. *Id.*; *Dilts*, 769 F.3d at 646.

**8.   The Rule Sets a Precedent at Odds with the ADA's Purpose**

Because the "plain wording" of the ADA's preemption clause applies to Rule 2305, this Court need go no further to grant A4A summary judgment. *CSX Trans., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). But in addition to falling squarely within the ADA's express preemption clause, Rule 2305 also "has a

21

'significant' and adverse 'impact' in respect to the federal Act's ability to achieve its pre-emption-related objectives." *Rowe*, 552 U.S. at 371-72.

Congress enacted the ADA's preemption clause to replace state regulation of air carriers with "'maximum reliance on competitive market forces.'" *Morales*, 504 U.S. at 378 (quoting 49 U.S.C. § 40101). Rule 2305 undermines this deregulatory goal by "substitut[ing]" the District's "governmental commands for 'competitive market forces' in determining (to a significant degree) the services that [air] carriers will provide." *Rowe*, 552 U.S. at 372. Market forces may someday require carriers to convert to ZEVs or install related technologies in their warehouses—but that has not happened yet. Rule 2305 thus "require[s] carriers to offer a system of services that the market does not now provide," and would "freeze into place services that carriers might prefer to discontinue in the future." *Id.* It "thereby produces the very effect that the federal law sought to avoid." *Id.*

Rule 2305 also interferes with the "integrated transportation system" that Congress "desired" and "freed . . . from the constrictive grasp of economic regulation by the states." *Fed. Express*, 936 F.2d at 1079. If Rule 2305 were upheld, then other states and local regulatory bodies could enact their own regulations, creating a "patchwork" of state and local "service-determining laws, rules, and regulations." *Rowe*, 552 U.S. at 373. Such a "regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Id.*

The type of local regulation of the air transportation system in the Rule cannot be reconciled with the congressional intent to reserve *to federal authority* the "promotion of adequate, economical, and efficient service by air carriers at reasonable charges." *Fed. Express*, 936 F.2d at 1078 (*citing* 49 U.S.C. § 1302(c)). The District's adoption of Rule 2305 directly conflicts with the sound regulatory environment intended by Congress to "facilitate adaptation of the air transportation

22

system to the present and future needs of the domestic and foreign commerce of the United States." *Id.* (*citing* 49 U.S.C. § 1302(a)(5)).[8]

### C.     The Rule is Preempted by the Clean Air Act

CTA argues that the Rule imposes a vehicle emissions standard beyond the District's regulatory authority and is preempted by the CAA. For judicial economy, A4A incorporates by reference CTA's Motion, with these additional points.

### 1.     The District Cannot Establish Vehicle Emissions Standards

Under the CAA, the statutory construction of cooperative federalism establishes two distinct and carefully circumscribed regulatory responsibilities to achieve the CAA's objectives: (1) states primarily regulate stationary sources, and (2) the federal government primarily regulates mobile sources. 42 U.S.C. §§ 7409, 7412. The CAA's language "is categorical" and broad in scope. *Engine Mfrs. Ass'n*, 541 U.S. at 256. A local authority may not impose mobile source emission mandates either directly or indirectly. *Id.* "Because the regulation of mobile source emissions is a federal responsibility, Congress has expressly preempted states from setting emissions standards for mobile sources." *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) (*citing* CAA § 209(a)).

Significantly, the District has asserted in the rulemaking that "the CAA is not the source [its] authority" to adopt the Rule 2305, but rather the Rule "represents an exercise of the State's police power [as] delegated to it by the state legislature." UF 26. As such, the District concedes that Rule 2305 is not premised upon any federal grant of authority under CAA Section 110, but instead is an ISR derivative of California State law. Having argued that the Rule is a creature of state

---

[8] *See generally Nw. Airlines, Inc. v. Minn.*, 322 U.S. 292, 303 (1944)) ("Federal control is intensive and exclusive".); *see also Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014) (emphasizing "Congress's goal of ensuring 'a single, uniform system for regulating aviation safety.'") (internal citation omitted).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT, CASE NO. 2:21-cv-6341

law, the District has negated any claim to a grant of authority under the CAA that would avoid federal preemption under either the CAA or ADA.

### 2.    Rule 2305 Establishes an Unlawful Purchase Mandate

The air carrier vehicles subject to the Rule meet EPA emissions standards. Notwithstanding that, Rule 2305 establishes competing mobile source emissions standards for trucks operated by air carriers in direct contravention of the CAA. 42 U.S.C. § 7412. Rule 2305 was structured to force A4A members to change their existing vehicle operations and employ trucks that meet ZEV standards, instead of federal emissions requirements. UF 8–9; 19–20. The Rule effectively establishes an emission standard prohibited under the CAA by imposing emissions limits on the vehicles of individual purchasers and end users. UF 9; 18.

The Supreme Court addressed this issue when it invalidated the District's previous attempt to adopt emissions standards by imposing a purchase restriction on vehicle end users. *See Engine Mfrs. Ass'n,* 541 U.S. at 256 ("It is . . . impossible to find in [§ 209(a)] an exception for standards imposed through purchase restrictions rather than directly upon manufacturers"). Mobile source emissions are federally regulated and not subject to local requirements. *Id.* at 252 (the District's rules set "standards," within the meaning of CAA § 209(a) which prohibits adoption or attempted enforcement of any state or local standard). There is no exception for a nominally styled ISR that has the force and effect of imposing a purchase mandate on individual purchasers and end users. *Id.* at 252, 256; UF 18. Moreover, ISRs under the CAA are confined to *new or modified* facilities, while Rule 2305 is directed at existing facilities. 42 U.S.C. § 7410(a)(5); UF 17.

### 3.    CAA Preemption Avoids Emissions Regulation Chaos

The statutory rationale underlying the preemption of local vehicle emissions regulation is undisputed in case law and grounded in well-settled policy. Congress did not envision in the CAA a panoply of regulations by myriad local entities

24

because of the chaos it would create within interstate commerce. The "spectre of an anarchic patchwork of federal and state regulatory programs" would be a nightmare for air carriers and the public. *Engine Mfrs. Ass'n v. U.S. EPA*, 88 F.3d 1075, 1079 (D.C. Cir. 1996) (internal citation omitted). National CAA regulatory efforts cannot succeed in a balkanized scheme of dozens of local standards for manufactures. *Engine Mfrs. Ass'n*, 541 U.S. at 256; *N.C., ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 296 (4th Cir. 2010) (scuttling the CAA's regulatory framework would lead to a "balkanization of clean air regulations and a confused patchwork of standards, to the detriment of industry and the environment alike.").

In enacting the CAA mobile source provisions, Congress was concerned that the adoption of numerous state and local regulations "could result in chaos insofar as manufacturers, dealers, and users [were] concerned." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. N.Y. State Dep't of Envtl. Conservation*, 17 F.3d 521, 524 (2d Cir. 1994). In *Engine Mfrs. Ass'n*, the D.C. Circuit cataloged the CAA's congressional history and objectives. 88 F.3d at 1079. The court explained the reasons for preemption of state vehicle emissions standards, including "the difficulty of subjecting motor vehicles, which readily move across state boundaries, to control by individual states." *Id.* Congress wanted to avoid "the possibility of 50 different state regulatory regimes" raising a "patchwork" of regulatory programs. *Id.*

Multiple emissions standards adopted by various localities, like the District, undermine the ability of manufacturers to comprehensively respond to the market in a way that best advances the human health goals of the CAA. Effective vehicle emissions measures must come from a uniform, top-down regulatory approach, consistent with policies under the Clean Air Act.

## V.    CONCLUSION

A4A respectfully asks this Court to grant its Motion for Summary Judgment.

25

Dated: November 14, 2022

BEVERIDGE & DIAMOND P.C.

Respectfully submitted by:

By: /s/ Gary J. Smith
Gary J. Smith (SBN 141393)
Gsmith@bdlaw.com
BEVERIDGE & DIAMOND P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: 415-262-4000
Facsimile: 415-262-4040

*Attorney for Plaintiff-Intervenor
Airlines for America*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-INTERVENOR
AIRLINES FOR AMERICA'S MOTION FOR SUMMARY JUDGMENT,
CASE NO. 2:21-cv-6341